UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:09-CR-68 (02) RM |
| | ) | |
| GABRIELE EYE INSTITUTE P.C. | ) | |

OPINION AND ORDER

This matter is before the court on Gabriele Eye Institute P.C.'s motion to dismiss indictment (document # 14). For the reasons stated below, the court DENIES the motion.

I. BACKGROUND

On June 11, 2009, the grand jury returned a fifteen count indictment against Philip Gabriele, M.D., Gabriele Eye Institute, P.C., and Marcella Gabriele alleging health care fraud, wire fraud, false statements, billing misrepresentations, concealing overpayments, and conspiracy. Philip and Marcella Gabriele died on June 15, 2009 from what appears to have been a murder-suicide (the investigation remains ongoing). The indictment against the Gabrieles was dismissed. The court-appointed personal representative of Dr. Gabriele's estate now controls GEI. The defendant asserts that the personal representative has never worked for GEI and has no knowledge of the facts surrounding the government's accusations. Given the circumstances of this prosecution, the defendant contends that a trial against GEI would violate its constitutional rights

to: (1) a fundamentally fair trial under the Fifth Amendment; and (2) confront and cross-examine witnesses against it under the Sixth Amendment.

GEI is an Indiana medical professional corporation. Since its inception, Dr. Gabriele was GEI's sole medical provider, director and shareholder and Mrs. Gabriele served GEI in a number of various capacities essential to running the practice. GEI is winding up its corporate affairs and the company ultimately will be dissolved.

GEI's due process rights mandate the right to a fair and meaningful opportunity to defend against the government's accusations. GEI contends that a fair trial is no longer possible in light of the Gabrieles' death. GEI reasons that because Dr. and Mrs. Gabriele are the only natural persons alleged to have engaged in the wrongdoing forming the basis of GEI's vicarious criminal liability, GEI has no fair or meaningful opportunity to defend itself without them. GEI notes that it can no longer consult with the Gabrieles, obtain their help in formulating a defense, or call them as witnesses to defend against the government's claims. GEI contends that "[a] criminal trial where a corporate defendant does not know and cannot learn the facts and mental state behind the actions imputed to it through the actions of its now-deceased agents is unfair, unjust, and unconstitutional."

GEI further claims that GEI won't be able to cross-examine witnesses effectively. GEI reasons that after a government witness testifies to the Gabrieles' alleged actions and statements and mental states, no one will be able to advise

defense counsel as to the testimony's truthfulness or advise counsel on the best way to effectively challenge that testimony. GEI explains that the heart of the government's case involves allegations about Dr. Gabriele's state of mind and intent when he made medical judgments about patient care and decisions to perform certain procedures and that without Dr. Gabriele, GEI cannot refute the government's evidence and explain why he made those medical judgments and decisions.

The government responds that GEI, as an entity distinct from the Gabrieles, can be prosecuted separately even without the corporate agents whose actions gave rise to criminal liability. The government reasons that the Gabrieles' criminal activities provided substantial financial benefits to GEI and critical interests can be served by prosecuting GEI, including restitution to hundreds of victims and criminal forfeiture. The government argues that GEI will receive a fair trial because it had more than two years' notice before the Gabrieles' death of the investigation leading to the indictment, during which time GEI shared legal representation with the Gabrieles and had ample opportunity to discuss the investigation with them, formulate possible defenses with their assistance, and acquire evidence in its favor. The government says GEI's counsel received extensive pre-indictment discovery and disclosures from the government and so was informed about the allegations presented by the government.

The government further notes that the Gabrieles had 21 employees, including two professionals who worked closely with the Gabrieles (Drs. Andrew

3

Anderson and Shannon Szuba), whom GEI can call as defense witnesses or use to prepare for cross-examination. During preparation of this case, GEI and the Gabrieles also retained several expert witnesses who also might be available to testify on GEI's behalf. The government contends that given the availability of these potential fact and expert witnesses and the significant documentary evidence that GEI had access to before the Gabrieles' death, GEI will receive a fundamentally fair and meaningful trial under the Fifth Amendment and the ability to confront and cross-examine witnesses under the Sixth Amendment.

## II. Discussion

A corporation is a distinct legal entity that can be separately convicted of a sentence for its agents' criminal offenses. *See* United States v. Sain, 141 F. 3d 463, 474 (3d Cir. 1998) (citation omitted). Corporate law recognizes a clear distinction between corporations and their shareholders. See Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 163 (2001) ("The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status."). "After all, incorporation's basic purpose is to create a distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural individuals who created it, who own it, or whom it employs." Id. (holding that president and sole shareholder of corporation was a "person" distinct from the enterprise subject to liability under RICO).

"[I]n the federal domain[,] prosecutions abate both on the death of an individual defendant and on the dissolution of a corporation unless the action is saved by statute." Melrose Distillers, Inc. v. United States, 359 U.S. 271, 272 (1959) (internal citations omitted); *see also* United States v. JACPG, Inc., No. 00-CR-1065, 2002 WL 1211303, at *1 (N.D. Ill. 2002). GEI doesn't seek the action's abatement based on corporate dissolution, noting that Indiana's business corporation law provides for continuing a proceeding against a dissolved corporation. IND. CODE § 23-1-45-5(b)(6) ("Dissolution of a corporation does not . . . abate or suspend a proceeding pending . . . against the corporation."). GEI's argument instead rests on the fairness of a hearing without the Gabrieles.

The Constitution guarantees every criminal defendant a fair trial. U.S. CONST. amend. V, VI; United States v. Ruiz, 536 U.S. 622, 628 (2002). The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the accusations brought by the government. Chambers v. Mississippi, 410 U.S. 284, 294 (1973). "Whether rooted directly in the Due Process Clause of the [Fifth] Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" Crane v. Kentucky, 476 U.S. 683, 690 (1986) (citations omitted). What constitutes the "basic elements" of a fair trial under the Fifth Amendment is determined "largely through the several provisions of the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 684-685 (1984). A defendant has the right to present

5

his version of the facts, Washington v. Texas, 388 U.S. 14, 19 (1967), to call witnesses on his behalf and to cross examine the witnesses put forth by the prosecution. U.S. CONST. amend. VI; Chambers v. Mississippi, 410 U.S. 284, 294 (1973).

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

Washington v. Texas, 388 U.S. 14, 19 (1967); *see also* Chambers v. Mississippi, 410 U.S. at 294 ("The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process.").

"The right of cross-examination is more than a desirable rule of trial procedure. It is implicit in the constitutional right of confrontation, and helps assure the 'accuracy of the truth-determining process.'" Chambers v. Mississippi, 410 U.S. at 295 (*citing* Dutton v. Evans, 400 U.S. 74, 89 (1970)). "[D]enial or significant diminution [of the right to confront and cross-examine] calls into question the ultimate 'integrity of the fact finding process' and requires that the competing interest be closely examined." Chambers v. Mississippi, 410 U.S. at 295 (*quoting* Berger v. California, 393 U.S. 314, 315 (1969)).

"[T]he Constitution entitles a criminal defendant to a fair trial, not a perfect one." Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986) (citations omitted). The right to present a defense isn't absolute. Defendants in criminal cases "must comply with established rules of procedure and evidence designed to assure both fairness and reliability." Washington v. Schriver, 255 F.3d 45, 55 (2d Cir. 2001) (*quoting* Chambers v. Mississippi, 410 U.S. at 302). The Supreme Court has "recognized that, given the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and that the Constitution does not guarantee such a trial." United States v. Hasting, 461 U.S. 499, 508-509 (1983) (finding that the prosecutor's reference to the defendant's failure to testify —a violation of the Fifth Amendment—was harmless). Similarly, the Supreme Court has explained that "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam); *see also* United States v. Cavender, 228 F.3d 792, 798 (7th Cir. 2000).

The issue in this matter is whether a trial against a corporation violates the corporation's right to a fair and meaningful trial when the agents whose actions gave rise to criminal prosecution are absent. Neither party presented this court with a case addressing the issue as it relates to criminal liability and the court, through its own research, could find none. Although not controlling, the court

7

finds persuasive the cases cited by the government indicating that the death of a shareholder doesn't affect civil proceedings against a corporation even if that shareholder is the very agent whose actions give rise to the proceeding against the corporation. In Schimpf v. Gerald, Inc., 2 F. Supp. 2d 1150, 1160 (E.D. Wis. 1998), the court found that even though the lawsuit against the corporation's agent abated upon his death, the lawsuit could continue against the corporation under a respondeat superior theory of liability. The court stated that "[o]nce [the employee] has acted, if he has acted in the corporation's behalf, any stigma which arises due to his act immediately attaches to the corporation. The subsequent death of the agent tortfeasor does not alter this." Id. at 1159 (*quoting* Soraghan v. Henlopen Acres, Inc., 236 F. Supp. 489, 490-491 (D. Del. 1964)). The court, citing to several cases, found that despite the agent's death, the litigation could proceed against the corporation and the facts necessary to establish the corporate employer's liability could still be established. Id. at 1159-1160 (*citing* Manson v. Wabash R.R. Co., 338 S.W.2d 54 (Mo. 1960); Biel, Inc. v. Kirsch, 161 N.E.2d 617 (Ind. 1959); and Parrott v. Ellis Trucking Co., 179 F. Supp. 534, 534-535 (S.D. Ind. 1960)).

The court understands and appreciates GEI's contention that the discovery and investigation performed before the Gabrieles' death was incomplete and involved only general allegations brought forth by the government, thereby leaving GEI without an opportunity to review specific cases with Dr. and Mrs. Gabriele. The Gabrieles' deaths undoubtedly will affect GEI's ability to defend itself against

8

the government's accusations in this case; however, the court finds that given the notice provided to GEI of the investigation, GEI's ability to consult with the Gabrieles before their death, the availability of potential fact and expert witnesses, and the documentary evidence in this matter, the Gabrieles' absence will not deprive GEI of its right to a fundamentally fair trial under the Fifth Amendment or its right to confront and cross-examine witnesses under the Sixth Amendment.

GEI can act through its corporate representative and counsel in defending against the government's accusations. About two years prior to the Gabrieles' death, the government provided notice of its investigation and documentary evidence to the defendants. The defendants shared counsel and could discuss the general accusations against them and formulate possible defenses. In preparation of defending this case, counsel for the defendants retained several expert witnesses and had the opportunity to review discovery, consult witnesses, and discuss defensive strategies with the Gabrieles. As the government indicated, the Gabrieles had 21 employees, including two professionals who worked closely with the Gabrieles, that GEI can call as witnesses in its defense or use to prepare for cross-examination. Further, there appears to be significant documentary evidence that GEI can use in preparing its defense and at trial. While this court understands that the Gabrieles' absence will make it more challenging for GEI to present its defense, their absence won't result in a trial that is fundamentally unfair or violative of GEI's constitutional rights.

GEI is a separate legal entity that can be subject to criminal prosecution for its agents' actions. Even though this proceeding has been dismissed against the Gabrieles, there are certain interests to the public and victims served by the criminal prosecution against GEI, including restitution and criminal forfeiture. These same interests may not be adequately served through civil proceedings.

III. CONCLUSION

The court DENIES Gabriele Eye Institute's motion to dismiss indictment (document # 14).

SO ORDERED.

ENTERED:  August 18, 2009

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court